Our final case set this morning for oral argument is 523-0529 in the marriage of Schell. I believe for the appellant, which would be Mrs. Schell, is Ms. Frist? Ms. Fist. Ms. Fist, thank you. And then on behalf of the appellee, Mr. Schell, we've got Mr. Hudson, correct? That's correct. Alright. Again, I don't think there's any procedural issues with this case we need to address before we get started. So, Ms. Fist, go right ahead. May it please the Court, Counsel. We are here today to ask this Court to reverse the trial court's findings from its order of April 18, 2023. In that order, the trial court looked at motions that the parties had filed, and among them were a motion by Mr. Schell filed immediately after his child support and maintenance order were entered in 2016, attempting to decrease his child support and decrease his maintenance as ordered. The trial court entered its judgment of dissolution on October 11, 2016 in the Schell case. The very brief historical background of the marriage is the parties were married 24 years. Mr. Schell is a civil engineer. He was employed at the time of the judgment by William Tao and earned, according to the finding of the trial court, $105,000 that year. Ms. Schell, as a mother of five of the Schell children, primarily stayed at home, and she, after the parties had their child, they decided that she would, if work at all, work part-time, and that she did. In the court's judgment of 2016, the court imputed income to Ms. Schell. She was making only around $21,000 a year and working part-time, so the court imputed income to $32,000 a year. The ink had barely gotten dry on that judgment when Mark Schell filed to modify his child support and maintenance. The trial court had ordered him to pay $1,266.60 in child support for the remaining three minor children and $1,905.66 in permanent maintenance for Sandra due to the length of the marriage. Now, when he filed his motion to modify, he filed it on March 28, 2017, within a few months after that court's judgment, on the basis that a substantial change in his circumstances had occurred. He claimed that his hours of employment had been reduced and that his income, therefore, was reduced by 20 percent, a magical number, and that he was entitled to not only a decrease in child support but a decrease in maintenance. He did not ask that the court apply successive reviews of maintenance for child support, and that one motion to modify maintenance in March of 2017 is the only motion he filed between 2017 and 2023 when the court made its ruling modifying the maintenance. It is our position that there was no substantial change in circumstance, and this is why. With regard to that issue, I have a couple of questions. Yes, Your Honor. The Supreme Court's mandate in this case that required a recalculation of support and maintenance. Does that order, ordering a recalculation, render the motion to modify removed because it ordered it? Well, you could take that position, Your Honor, or you could take there simply wasn't a substantial change in circumstances because that income through the Supreme Court's mandate, which I was getting ready to mention, that required him to include his mandatory withdrawals from an inheritance of over $614,000 be computed into the calculations for child support and maintenance. Well, and then a second question related to that is you're arguing that only a 3% loss occurred between the combined incomes. Do you have any authority that says what percentage is enough or that 3% is not sufficient for a substantial change? No, Your Honor, I do not. And, in fact, what I did see when I looked at case law on this is that it's up to the Court's discretion, and the standard applied is whether it's an abuse, the Court abused its discretion, in other words, in an order that was arbitrary or unreasonable or patently unfair. In this particular case, it is our position that that's exactly what happened, because when it was. You're arguing an abuse. Of discretion. Yes, I am, Your Honor, because after you add his mandatory withdrawal income in, Mr. Schell's income only changed by $1,000. That does not, that is not a substantial change in circumstances under anyone's criteria, I wouldn't think. Now, to be perfectly candid with the Court, Sander's income increased by $7,000 that same year to $39,000. So we have Mr. Schell with an income of $104,000 that year and Sander with an income of $39,000. What the trial court failed to consider whenever it determined a substantial change in circumstances had occurred is this looming, huge inheritance that Mr. Schell had gotten right before the judgment of dissolution was entered, $614,000. And it was never calculated into his income for purposes of trial support only. And the Supreme Court ordered that to be income, right? Only the mandatory withdrawals that he was, he had to take every year. The Supreme Court did not order that the $614,000 be included in his income. So what happens as a result is that there's no substantial change in circumstances because Mr. Schell's income not only just dropped by $1,000 that first, when he filed his motion, but he also had an asset worth $614,000. Factor number six says that it's incumbent upon the court to look at the properties that the parties have, that the assets that they have. Wait a minute, though. But that means joint properties. The same is if your client somehow during that time came into a windfall of $600,000, would it be your position that that should be considered against her as well? Absolutely. And, Your Honor, that's my point. The elephant in the room is the $614,000. His circumstances didn't change because with a difference of $1,000 and a $614,000 pool of cash, he certainly had the ability to continue paying maintenance, whereas Sandra's income went up only to $39,000 for that year. I would like the court also to note that Mr. Schell never filed a second motion to modify, and I'll tell you why. Because his income kept going up incrementally and substantially. If I may, the court's finding as to income, the year he filed the motion, as I said, he made $104,341 according to his admission and the court's finding. In 2018, the following year, his income shot up to $114,595. Sandra's remained the same. The next year, Mr. Schell's income went up to $143,000. Sandra's went only to $45,000. So it continues to be that way throughout until 2023 when the court's ruling came down. Mr. Schell's income, with the exception of 2021, when he only made $107,000, otherwise it was quite beyond what he initially was making, $104,000, when he filed his motion to modify. So there is absolutely no factual basis to support a modification of maintenance downward in this case. In fact, you know, I can't argue one way and then ask the court to increase their maintenance because that would certainly not make sense. But there's simply not a change that would allow a decrease in maintenance whatsoever. And I guess to top it all off, the court went beyond 2022 and said, well, I'm going to hold this decrease, just decrease it across the board based on a filing in 2017. In 2023, decrease the maintenance across the board for each year based on what I think is a proper finding of a substantial change in circumstances. But also, it went beyond. It took 2022 into consideration. I argued at the motion to reconsider hearing that 2022 is improper to even consider because at the time I didn't even have the tax return for Mr. Schell for 2022. So what the court did, if you look at the order, the court said, well, I'll let you come back later if you like and file something on that. Well, unfortunately, that again serves to penalize my client because if you look at the court's ruling, there was an underpayment of child support by Mr. Schell based upon the incomes of the party. And the court offset the underpayment of child support that was due to my client with an alleged overpayment of maintenance by Mr. Schell in the amount of about $15,000. So what it did was set off the underpayment of child support with the overpayment supposedly of maintenance and then said, well, Mr. Schell can just quit paying maintenance at all to recoup his overpayment of maintenance and added interest against my client as well on those sums. So we have an issue with that as well because. That brings me to your issue four. You're asking for medical bills for the children and interest on the medical bills. Yes, sir. I'm trying to understand what relief you're requesting as to issue four. You are saying in your brief that the trial court abused its discretion by failing to order interest on the overdue medical bills. But you also state that the standard of review requires the court to interpret a statute and thus is de novo review. So I'm trying to understand, are you asking the court to interpret the statute or are you arguing that the court abused its discretion? I just want to interject so we're clear for the record. Everything Judge Moore just said, I just want to be clear. It's issue three. So the record's clear that that's issue three. Okay, I'm sorry. Oh, thank you. Okay. To clarify, Your Honor, I believe the court abused its discretion in failing to award Sandra interest on the medical bill payments that should have been made by Mr. Schell. I don't think the court had discretion to refuse to not award interest. It's part of a child support order, and I think that the court had to award interest on the nonpayment of those bills. Okay, thank you. Sure. Also, Sandra had filed a motion to increase child support based on Mr. Schell's increased income. She filed that in November of 2018. The trial court did not take that up and did not award her any increase, any relief on that issue, even though clearly Mr. Schell's income had substantially increased. In addition, there was a credit card bill that Ms. Schell was ordered to pay. She had not paid it. The trial court entered judgment against her from the date of the original order that she was ordered to pay. The original order did not have a date certain at all for her to make that payment. There is a subsequent order that did give her a certain allotted amount of time, 45 days to pay, but it is our position that the interest to be calculated on that judgment should have commenced as of the second order, not the original one that had no date certain by which to pay. And I believe, just to be clear in my notes here, that would have been June of 2018. That's correct. As far as the modification of child support, Mr. Schell, when he filed for his initial modification along with maintenance in 2017, again, couldn't show a substantial change in circumstances. He did, however, to be candid with the court, file again in December of 2018 for a modification of child support, and I believe if any modification of child support were to be granted to him, it could not take place until, if the facts wore out, until he had filed that second motion to modify child support, which was in 2018. I would like to point out one other thing with regards to the substantial change in circumstances argument as to why the maintenance should not be modified at all. I'll give you a brief time to do that. I'm sorry? I'll give you a brief time to do that. It won't take long, Your Honor. In the court's original judgment of October 11, 2016, the court made this finding. It's on A15 of the appellant's brief. Quote, the court notes that Mark will receive additional monies through his inheritance after the sale of property held in trust at some unknown time in the future. In addition to the $614,000 that he had at the time Mark filed to modify maintenance, the court also found in its ruling that Mark was going to have additional monies that he would inherit. Never have known what those were or would be, but it is a finding by the court as to that issue. Thank you. Before we let you go, I just want to make sure. Any questions? No. Justice Moore? No other questions. All right. Thank you very much. Thank you. Counsel, you have your time for your row. Go right ahead. Ms. Viss, Your Honor, may it please the court. We are here today to discuss an appeal filed by Ms. Schell in regards to the April 18, 2023 court ruling. Ms. Viss, in her argument, laid out a brief review of what occurred. This case is actually filed in 2014. The motion to modify the judgment was entered in 2016. The motion to modify was filed in 2017. We are now seven years, over seven years from the date that motion to modify was filed. During that time, we've been here to the appellate court. This is our second time at the appellate court. There was an original appeal filed that was dismissed as not a final order and sent back. The court certified a question. We came back to the appellate court. Once the appellate court had ruled, it was appealed to the Supreme Court, who took the case. They issued their ruling in November of 2021. At that point, we were already four years past when the original motion to modify had been filed. The petition to modify and the evidence at trial did show that Mr. Schell had been notified by his employer that he was receiving a 20% cut in his pay, effective in that March. We didn't get to that until many years down the road because of the continuances, the discovery requests, the appeals. It took time. It took a lot of time. Here we are today. Mr. Schell was subsequently let go from that appointment in February of 2018. He did obtain a new appointment approximately a month later. There's been employment changes. There's been reductions in employment. Ms. Fiss talked about her client. Her client's income has increased essentially year after year to where she's now making $68,000. Ms. Schell mentioned in her argument that at the time the judgment of dissolution was entered that her client was making $21,000. I believe that number is actually $28,000, and the court imputed it to $32,000, stating that the court found that she could work full-time at the rate that she was employed at that time. So they imputed her to $32,000 a year. Subsequently, in 2017, she made a little over $39,000. My client's income, Mr. Schell's income, in 2016, the mandatory retirement withdrawals weren't being applied. They applied the dividends, and they applied the interest to come up with the initial income for Mr. Schell in 2016. In 2018 or 19, I can't remember the exact year, that's when we had the initial hearing. Judge Keeblin at that time ordered that the mandatory retirement withdrawals were not part of his income. That's the order that was initially appealed through the Fifth District and then subsequently on to the Illinois Supreme Court. The Supreme Court answered that question in the affirmative and said they were part of income and were to be calculated. That did dramatically change Mr. Schell's income, as the court will see in the briefs and in the order. The argument made by Ms. Fisk that the court did not take into consideration her petition to increase child support is just simply not accurate. The court, in its order, took the income for every single year and calculated, based on Mr. Schell's income and Ms. Fisk's income, what child support should be in 2017, what child support should be in 2018, 2019, so on and so forth. They did the same thing with maintenance. Where did the trial judge make those calculations? The calculations themselves were presented. We, myself, on behalf of my client, presented the demonstrative evidence at trial where we had ran the calculations. I'm asking which trial judge reviewed the calculations. I'm sorry, Your Honor, Judge Foley. He had made those calculations. He had done the maintenance calculations for every year based on the incomes that were presented, because the incomes did fluctuate. They fluctuated greatly. When was that hearing? The hearing itself was on July 18th of 2022. On July 18th of 2022, we were set for a hearing. Ms. Fisk's client did not appear at that hearing at that time. Ms. Fisk stipulated to all the exhibits going in. The exhibits were basically the tax returns, the letters. She had reviewed the exhibits at that time, stipulated to a stack of them going in. She also had an opportunity at that time to question my client. The hearing was then continued to, it looks like, February 2nd of 2023 was when we had the second half of that hearing. I believe there were dates closer, but because of court's unavailability or some other documents needed occasionally, that it was pushed off. So there was about 11 months between the start of the hearing and the end of the hearing. At that point, the judge, in regards to the child support, at the time this was filed, there were three minor children. The first of those three minor children became emancipated in May of 2017, so approximately three months after the petition to modify was filed. The second minor child became emancipated in June of 2019. And then the last minor child became emancipated on May 31st of 2022, or 2021, I'm sorry. And at that point, we've all agreed that child support terminates. The question is the income for those years and what child support should have been and what maintenance should have been. The court, using their discretion, found that the most appropriate way to do that was to look at every single individual year. Because Ms. Viss is correct, there were two years where my client earned over $140,000. As his testimony pointed out, there was a mistake on what sort of mandatory withdrawals he had to take, the amount he had to take from the accounts. And so they had to do a catch-up. So he had to take those amounts out or he would have been taxed. So that account, after the 2021, I believe 2020 or 2021, was depleted. It was no longer there. The mandatory retirement withdrawals are no longer occurring. The only thing he receives now is the dividends and interest, and that was his testimony to the trial court at that time. That was all calculated by the court? Yes, sir. And that was calculated in their order. And in paragraph 3, the court goes over and basically, of the April 18th order, the court goes through and basically says, in 2017, this should have been the child support. This is what he underpaid every month. In 2018, this should have been the child support. This is what he underpaid or overpaid every month. And they do the same thing for maintenance in paragraph 5. In regards to the court not taking the property or the inheritance amount into consideration, the court in paragraph 6 states, of the April 18th order, states, the Illinois Supreme Court issued their opinion on November 18th, 2021. This court has implemented that opinion in the ruling herein and has considered the respondent's inheritance and included mandatory withdrawals that the respondent made from his inherited accounts as income in calculating the child support and maintenance. The parties had previously stipulated that interest and dividends were to be calculated no matter what. So that was all, the court did consider all that. It did consider the property of the respondent. There were financial affidavits on file. It considered the, and those are in the record, those are part of the exhibits. In regards to the medical expenses, the medical expenses that were presented by the court, or presented by Ms. Schell in court, were massive. It went all the way back to $16,000. It requested thousands upon thousands of dollars. The court found three or four specific ones in there that were asked by Ms. Schell, counsel at trial, that says you intended to pay these. I didn't. My client testified that he offset those by things that he had paid for the children also. There were competing Excel spreadsheets. The court reached this number, stating I believe just over, around $1,600 or a little more. They found that my client hadn't paid. My client subsequently satisfied that amount once the judgment was entered. Our argument is, in regards to the interest, is until the court found that he owed those amounts, as there was a dispute as to whether or not he believed he owed them, that there was no judgment. Once the judgment was entered, my client satisfied that amount. In regards to the credit card, the judgment was entered stating she owed that amount, the credit card. There's no dispute of that. She owed the $3,800 in the credit card bill. That was entered. Their argument is that a year or so later, there's an order saying pay that within 45 days, because the judgment was silent. We have stated in our brief that that should be reviewed de novo, because the statute specifically states that judgments accrue interest upon the judgment being entered. Just because there was a later date as this was pending through court and the court, the judge said pay it within 45 days, doesn't negate the fact that she hadn't paid it in over a year. And we believe that the interest should start accruing upon the judgment being entered as 12-109 states. In regards to the maintenance itself, the case law is clear. It doesn't necessarily have to be an increase in his income or a decrease in his income or an increase in her income or a decrease in his. It can be a combination of all of that. The last factor, Factor 9 and Factor 14 in awarding maintenance, both allow the court equity powers to look at any other factor they deem to be relevant. And in this case, I would argue that seven years in court, there was a lot of changes in seven years in court. You went from three minor children to no minor children. You had incomes fluctuating on both sides. Hers steadily went up. Mark's went up, went down. Now it went back up. In regards to the 2023 child support, that was done based on the 2022 income. We presented the income at trial. The income, the W-2s, those have been presented. Those are in the record. Part of the record is the exhibits. What the judge did is said nobody has filed their 2022 taxes. So he took the income information he had. This is what Mark's income was for 2022. This was her income for 2022. And stated this will be the child support and the maintenance going forward, but both of you have to turn over your 2022 tax returns to the other side upon filing. And then in the event either party believes that the numbers should have been different, you can file with the court, and we will address it. He, in the order, says we will go back to January 1st of 2023 if we have to, if the incomes were not as they were presented at trial, which I believe is the example of the court using their discretion, which is what they are to do in determining these things. We can't come back every month or every two months. There's always a delay. There's always a delay when something's filed. We file things all the time upon information and belief. We filed, as Ms. Fisk correctly pointed out, in December of 28, they filed a motion to modify child support. We filed saying, well, in May, there's going to be another child turning 18. It should modify no matter what, because at that point, we were kind of in limbo. We were in flux. We didn't know what was going to happen. We hadn't had a hearing. Then COVID hits, and we're a year or two, we don't get hearing stream that time. Now here we are. It's no fault of either party. The case has been pending a really long time. It's our position that the court did not abuse their discretion, that the court went above and beyond to determine the incomes every single year to make sure it was fair for both parties and that neither party was getting hit because of the delay, because of the delay that wasn't attributable to my guy, that also wasn't attributable to Michelle for the most part. A lot of it was court delays or COVID. And appeals. Appeals, frankly, took a long time. With the Supreme Court, it took a year or so to get everything through and going. So when it came back, there was no argument in the incomes. The incomes, we all agreed, these were the incomes that the parties earned these years. We presented demonstrative exhibits at trial that showed what the child support should be for each year, and what the maintenance should be for each year. Ms. Fisk did present some maintenance calculations, but she never presented child support calculations until they came as exhibits to a proposed order. That was the first time we had seen their child support calculations. In regards to the sale of the property, that was never brought up. That's never been an issue. This is the first time I'm hearing, other than it was in the judgment where the judge pointed out there's additional property they could sell, they could get money, Mark hasn't brought it. There's other people that stood to inherit and didn't inherit from his parents as well. That has never been brought up. It's never been an issue at trial. It's never been questioned. This is the first time that this has been brought up, other than that original judgment in 2016. Additionally, as I stated in that 2016, the income of Mark was calculated without the mandatory retirement withdrawals. That was not until 2021, when the court said you've got to include these, that we went back and added them every single year starting in 2017 when the original motion was filed. Just his employment income and dividends and those incomes, as I've pointed out in my brief on page 7 of our brief, that his income was $105,000 in 2006, including dividends and interest. In 2007, his income with the dividends and interest was $92,643. That's prior to us getting the court ruling that said include the mandatory withdrawals. That's also why his income shot up to $140,000 in those two consecutive years as well. That's all I've got. Thank you, Your Honors. Before we let you go, Justice Moore, no others? Ms. McGinn. Thank you, Your Honor.  Most notably, what I did not hear counsel argue was that there was a substantial change in circumstance that occurred to Mr. Schell's income at the time that he filed in 2017. And I salute him for not arguing that because it would have been an insincere argument. The facts are what they are. There was no $1,000 change in circumstance for Mr. Schell while he had accounts worth hundreds and hundreds of thousands of dollars. There should be no modification of maintenance for Mrs. Schell, and there should be no change in child support until the first petition to modify child support was filed in November of 2018. There is nothing in the statutes that I've ever found that says that you can file a petition for modification in 2017, as occurred here, and then successfully modify year after year after year at the risk of sounding like a freshman law student. What you have there is unconstitutional if that occurs. There's no notice to my client. There's no due process. And what happened was, by applying in retrospect to a situation that should never have been brought, because now we know that his mandatory withdrawals was part of his income, what's happened is my client's been denied due process. She has been out legal fees she can't afford to say that this litigation has been a drain on her. When Mr. Schell filed his notice to appeal to the Illinois Supreme Court, challenging this court's ruling that said that mandatory withdrawals from IRA or inherited IRAs must be included as income, that set her back another several thousand dollars. The inequities here are unmistakable. And if you need further proof, Your Honors, I would like to read to you a finding. This finding is what really caused the retroactive maintenance finding that my client owed Mr. Schell 15,000 in back pay. This is how the court got to that. I'm quoting. In 2020, the year COVID struck, quote, while Petitioner's Exhibit 6 shows income of $21,294 for the year 2020, Petitioner testified that she did not apply for unemployment and that she continued to work her duties, often with no pay, because her employer could not afford to pay her. The court finds Petitioner's actions to be a result of her own volition and willingness to continue working for no pay. And considering the substantial unemployment benefits available during COVID, she could have made substantially more money than the $21,294 in 2020. And they imputed about $24,000 to her. The income figure that you see for my client for 2020, that appears to be $45,000, includes $24,000 of income imputed to her during the time of COVID. Your Honors, I'd ask that you vacate that portion of the court's ruling assessing $15,000 against my client for overpaid maintenance. That you make the other awards that I've asked for in my brief. And I thank you for your time. Thank you, Counsel. Any final questions? No questions. Okay. Thank you. Counsel, obviously we will take the matter under advisement. We will issue an order in due course.